Trent N. Baker
DATSOPOULOS, MacDONALD & LIND, P.C
201 West Main Street, Suite 201
Missoula, Montana 59802
Telephone: (406) 728-0810

Attorneys for Relators

**FILED**

**OCT 3 0 2012**

Clerk, U.S District Court
District Of Montana
Missoula

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| FAWN CAIN, TANYA ARCHER, and SANDI OVITT, <br><br> Relators and Plaintiffs, <br><br> vs. <br><br> SALISH KOOTENAI COLLEGE, INC., SALISH KOOTENAI COLLEGE FOUNDATION, ROBERT FOUTY, JIM DURGLO, RENE PEIRRE, ELLEN SWANEY, LINDEN PLANT, TOME ACEVEDO, ZANE KELLY, ERNEST MORAN, Salish Kootenai College Board of Directors, and DOES 1-10 <br><br> Defendants. | Cause No.: CV 12-181-M-DLC <br><br><br><br><br> **COMPLAINT AND REQUEST FOR JURY TRIAL** |

COME NOW Relators and Plaintiffs, by and through their counsel of record,

Trent Baker of the law firm Datsopoulos, MacDonald & Lind, P.C., and for their

Complaint against Defendants, Montana Corporations and individuals, allege and aver as follows.

## STATUTE AND JURISDICTION

1.  *Qui Tam* Relators bring this suit on behalf of the United States of America pursuant to 31 U.S.C.A. §§ 3729 *et seq*.

2.  A copy of the Complaint and written disclosure of substantially all written evidence and information the Relators possess has been served on the United States Government pursuant to Rule 4(i) of the Federal Rules of Civil Procedure. This Complaint is filed *in camera*, under seal, and may not be served upon the Defendants until further order of this Court.

3.  Relator, Tanya Archer, is a resident of Montana. She was employed by Defendants as nursing and simulation instructor until her contract was terminated in May 2012.

4.  Relator, Fawn Cain, is a resident of Montana. She was employed by Defendants as an instructor, mentor and clinical coordinator until her contract was terminated in April 2012.

5.  Relator, Sandra Ovitt, is a resident of Montana. She was employed by Defendants as Program/Grants Manager until her contract was terminated in May 2012.

6.      Defendants Salish Kootenai College, Inc. and Salish Kootenai College Foundation are corporations duly organized and licensed to do business under the laws of the State of Montana, and with their principal places of business and headquarters in Lake County, State of Montana.

7.      Defendants Salish Kootenai College Board of Directors are Montana Residents retained by Salish Kootenai College to plan, develop and implement goals and policies consistent with U.S. Department of Education guidelines. This includes the planning for and utilization of costs, fees and monies received by Defendants for its nursing program.

8.      Jurisdiction exists pursuant to 31 U.S.C.A. §§ 3730(b)(1) and 3732 inasmuch as this action seeks remedies on behalf of the United States for violations of 31 U.S.C.A. § 3729 *et seq* by a Defendant which can be found, resides and transacts business in this District. Pendent jurisdiction for State and common law claims is proper based upon common nucleus of operative fact underlying all claims and to further interests of judicial economy, convenience and fairness to the litigants.

9.      Venue exists in this District pursuant to 31 U.S.C.A. § 3730(b)(1) inasmuch as Defendants are qualified to do business in the State of Montana, conduct substantial business in the State of Montana, and transact business in this

District.  Relators are citizens of the United States of America and residents of Lake County, Montana.

10.    The *qui tam* action is brought on behalf of the United States to recover all damages, penalties and other remedies established by and pursuant to 31 U.S.C.A. §§ 3729 to 3733, and Relators claim entitlement to a portion of any recovery obtained by the United States as *qui tam* plaintiffs authorized by 31 U.S.C.A. § 3730.

11.    Relators are an original source of the information stated herein.  They possess knowledge independent of any public disclosure and which is independent of and materially adds to any such publicly disclosed allegations or transactions. 31 U.S.C.A. § 3730(4)(B).

12.    This Court has jurisdiction under 31 U.S.C.A. § 3732 which provides that any action under Section 3730 may be brought in any judicial district in which the Defendant or in the case of multiple Defendants any one Defendant can be found, resides, transacts business or in which any act prescribed by § 3729 occurred.  The acts complained of herein occurred in Lake County, Montana.

## I.   *QUI TAM* ACTION I

## INDIAN HEALTH SERVICE ("IHS") PATHWAYS INTO NURSING EDUCATION ("PINE") GRANT

13.     In order to acquire federal funds under the PINE grant, Defendants engaged in fraudulent activity by knowingly submitting claims and representations which they knew were false to the U.S. Department of Health and Human Services ("USDHHS"), Indian Health Service ("IHS"), Division of Grants Management or, in the alternative, made, caused to be made or used false records or statements to submit or support such claims.

14.     Defendants asserted their objective to be the recruitment, training, retention and development of American Indian and Alaska Native (collectively "AI/AN") students in health-related professions to work in underserved communities.

15.     The IHS conditioned award of grant monies upon the enrollment of full-time AI/AN nursing students in the Associates of Science in Nursing ("ASN") and Bachelors of Science in Nursing ("BSN") programs.  Grant monies were to be used to pay Defendants for student tuition and associated expenses specifically spelled out in budget documents submitted by Defendants.

16.     To remain eligible for receipt of grant monies, ASN/BSN students were required to maintain full-time enrollment in the nursing program until completion of the course of study for which the monies were provided.  The

students were required to maintain an acceptable level of academic standing as defined by Defendants, and their retention on probationary status was to comply with Defendants' established policies and procedures.

17.   According to Defendants' internal policies and procedures, Defendants represented they would provide test taking, tutoring, peer mentoring and other resources to struggling students to ensure those students receiving federal grant monies were prepared to succeed through the program.

18.   Defendants were solely responsible, acting on behalf of the IHS, for receipt and payment of tuition and other expenses from grant monies.  They were not permitted to alter or re-budget the scheduled expenses paid without prior approval of the IHS Grants Management Officer.

19.   If ASN/BSN students failed to maintain an acceptable level of academic standing or withdrew from the program before graduating, all grant monies were to be repaid to the United States within three years of failure to comply.  Defendants were required to notify the IHS Project Officer immediately if any scholarship recipient failed to take a full-time course load or remain in good academic standing.

20.   Defendants were responsible for monitoring the progress of scholarship recipients and for immediately advising of enrollment changes, progress reports and notices of academic problems.  Any statements, press releases

or documents describing the program and monies received and spent was to clearly state the percentage of the total cost of the nursing program, the dollar amount of Federal monies received and allocated to the program, and the percentage of total costs financed by nongovernmental sources.

21.    Beginning in July 2008, continuing through March 2012, and semi-annually between those dates, Defendants submitted applications and reports for $1,675,002.00 in grant funds which they knew to be false.  Defendants received federal grant monies totaling $1,340,000.00.    Monies were distributed to Defendants in annual $335,000.00 increments based upon their representations regarding continuing program viability, compliance with stated objectives, and proactive efforts to correct deficiencies and shortcomings in student retention and graduation

## GRADE MANIPULATION AND NON-COMPLIANT RETENTION

22.    In order to remain eligible for grant funds, Defendants engaged in fraudulent activity in their submission of renewal applications and progress reports to the IHS.  Those applications and reports contained assertions regarding student retention, course passage and graduation rates which Defendants knew to be false.

23.    Defendants misrepresented or failed to disclose high attrition numbers in their communications with IHS.  When reporting difficulties in maintaining retention, student failure or failure to attain reported objectives, they

misrepresented the actual numbers of students who had failed, withdrawn or were otherwise unable to satisfy course requirements.

24.    Defendants inflated, modified and curved student grades to reflect a higher passage and retention rate than what was actually achieved by their ASN/BSN nursing students.  The numbers and reports submitted to the United States misrepresented the actual use of grant monies and program welfare.

25.    Defendants retained students and allowed re-matriculation of failing students contrary to their internal protocols and procedures in order to bolster an appearance of program success and remain eligible for grant monies.  They withheld this non-compliance from the United States.

26.    Defendants made such misrepresentations despite numerous complaints and expressed concerns by Relators and others that such grade inflation and manipulation was contrary to the students' best interests, contrary to the interests and stated objectives of the school, and contrary to the representations made to the United States regarding qualification for and use of grant monies.

## FAILURE TO PROVIDE REPORTED SERVICES

27.    Defendants advised IHS that they would provide continued and progressive programs and resources to assist their ASN/BSN grant recipients succeed through the program.  The stated goal was to graduate students prepared to pass nursing boards and provide nursing services in underserved communities.

That post-graduation service was required of students to pay back their federal scholarships.

28.    Very few of those programs and procedures reported to be in place were implemented.    Those few were poorly organized and provided little assistance to grant recipients.    However, Defendants continued to accept grant monies for services they were not providing.

29.    Defendants made such representations to assure the United States that grant monies would be well-spent and would further the stated objectives of the grant program.    Though paid for with grant monies, these programs and services were not provided or were provided haphazardly and without committed staffing and resources.    This contributed to low passage and retention rates.    Those passage and retention rates, in turn, were not truthfully reported.

30.    Defendants advised IHS that students who failed or withdrew would be readmitted only under certain retention track education plans, and those plans would be implemented with grant funds.    However, few plans were made, fewer were followed and only limited resources were provided to assist students to improve and reintegrate into the ASN/BSN program.

31.    Defendants repeatedly made exceptions for AI/AN students, retaining or readmitting many without complying with its internal policies for retention or readmission as required by grant issuing documents.    Defendants inflated or

modified the grades and adjusted internal policies to retain students and enable their continued enrollment and receipt of IHS grant monies.

## INTERNAL SAFEGUARDS

32. Defendants advised IHS that they had a variety of internal and administrative safeguards to ensure proper budget completion and compliance. They advised that internal Project Director, Chief Financial Officer and others would provide those safeguards.

33. In actuality, there was little oversight over grant monies and expenditures. Defendants ignored repeated warnings from employees that Grant monies were being spent improperly, that Defendants were not complying with obligations and representations under the Grant, and that expenditures unrelated to IHS grant requirements could not be supported or justified.

## REPORTING OF SHORTCOMINGS

34. In approximately February 2010, Defendants submitted a Semi-Annual Progress Report to the United States in support of their request for an additional $335,000.00 in IHS grant monies.

35. Defendants reported that retention numbers had dropped, but explained that numbers were down due to three student failures and high faculty workloads. They reported that retention activities such as orientation, test taking

and study skills courses, tutoring, peer mentoring, and readmission retention courses were ongoing.

36.    Defendant withheld from the United States that many students were retained for reasons and upon criteria not supported by SKC policies. Defendants concealed from IHS that grades had been inflated to keep retention numbers higher than they should have been. Defendants concealed that they had violated or modified internal policies for retention of students experiencing difficulties with the nursing program, contrary to grant requirements.

37.    Defendants advised that the Project Director for the IHS grant had been instructed by IHS to attend grant workshops and work closely with the Program/Grants manager to keep her updated on grant activities. This did not happen. Defendants repeatedly ignored or superseded recommendations or concerns that grant monies were being spent on activities or personnel not authorized by the awarding documents.

38.    Defendants and its agents directed monies be spent on food, conferences and employees for which they were not designated, despite repeatedly expressed concern by the Grants Manager.

39.    Defendants advised IHS that it would bring in a Project Evaluator to review quantitative and qualitative reports, conduct interviews and identify

progress in key areas related to the project's objectives. This was never done, and the failure to do so was withheld from IHS.

40. Ms. Lynda Brown was later brought in to conduct an evaluation of dissent and discord within the program. However, despite Relators' request for a resulting report or opinions in June 2012, Defendants instructed that no report had been completed and any notes regarding her findings were confidential and would not be released.

41. At this point, and as a necessary consequence of grade manipulation, Defendants' graduates were experiencing extreme difficulties in passing the National Council Licensure Examination, or "NCLEX". The exam is necessary for certification to practice in the nursing profession, and is required to satisfy student obligations to the IHS in paying back the United States for receipt of scholarship funds.

42. Defendants advised IHS that the Montana Board of Nursing directed immediate action to increase NCLEX passage rate, and that it would evaluate new strategies for retention and student competency. Defendants advised IHS and the Board of Nursing that remedial actions would be taken, but implemented few of the strategies, again misleading IHS regarding the health of the nursing program and the use to which IHS monies were being put.

43.     Defendants concealed from IHS that approximately 25-30 students had failed or withdrawn, approximately 25-35% of those enrolled.     This concealment of crucial enrollment information was a violation of their obligation to notify the IHS Project Officer immediately of any concerns or difficulties with student retention or passage that arose.

44.     Though Defendants acknowledged a failure to meet projected goals, they withheld and concealed the extent of the real problem. Grades were being manipulated for AI/AN students and scholarship recipients throughout the ASN and BSN programs.  In order to dispel the notion that the program was failing and to enable Defendants to continue to receive grant funds, Defendants retained students contrary to their own internal policies and procedures.

## II.     *QUI TAM* ACTION II

## UDHHS NURSING WORKFORCE DIVERSITY ("NWD") GRANT

45.     The USDHHS and Health Resources and Services Administration ("HRSA") NWD Grant provides support to projects which increase nursing education for individuals from disadvantaged backgrounds.  Those backgrounds include racial or ethnic minorities which are underrepresented among registered nurses.

46.     The program is designed to provide remedial and support services to assure those disadvantaged students complete a rigorous nursing education.  The

themes reflected in the Nursing Workforce Development Public Health Service Act, Title VIII, from which the NWD grant arose, is founded on several premises. Those premises include: improvement of distribution of health professions workers in underserved areas; strengthening the infrastructure of organizations which facilitate those workers' training; improving the representation of minorities and disadvantaged individuals in the health professions; and improving accountability for Federal dollars used in these processes.

47.    In order to acquire grant funds, Defendants engaged in fraudulent activity by submitting claims which they knew were false or, in the alternative, making, using or causing to be made or used false records or statements to submit claims to the USDHHS, HRSA and IHS.

48.    Defendants, through their agents, submitted applications for and received approximately $1,052,339.00 in grant funds.   Those applications and reports contained representations which they knew to be false on or about July 1, 2009, May 11, 2010, and March 15, 2011.

49.    The NWD grant required Defendants to recruit, retain and graduate a high percentage of students from a disadvantaged background from an accredited nursing program.   Defendants were required to increase matriculation and graduation rates for students from disadvantaged backgrounds in order for the

grant to be continued. Defendants were required to timely report any difficulties or deficits in obtaining this objective.

50.    In order to acquire and maintain grant funds, Defendants engaged in fraudulent activity by: modifying grades and student progress reports to the United States;  submitting applications, statements,  and progress reports containing assertions regarding graduation and course passage rates which they knew were false; and by omitting or keeping intentionally vague references to student failure and attrition.

51.    On or about July 2009, May 11, 2010, and August 24, 2011, Defendants submitted original and renewal grant applications and reports to the United States, through the USDHHS, for payment of monies totaling $1,052,339.00. The monies eventually awarded were apportioned over three years.

52.    Performance data for the recently completed academic year was to be reported for each budget period.

53.    To be selected and to remain eligible for federal monies, Defendants asserted to the United States that they would develop a nursing infrastructure to recruit disadvantaged students, including AI/AN students, into their nursing program.

54.    Defendants misrepresented that they had implemented strategies for self-sufficiency which would enable the nursing program to provide continued

services upon the expiration of the grant.  This representation was relied upon by the USDHHS and HRSA in awarding the grant monies.  Those reported strategies were not implemented or followed, and the failure to do so was concealed.

55.    Defendants misrepresented they would implement self-evaluation procedures to ensure the gathering of formative and summative data to ensure the achievement of goals and outcomes.  Those evaluation protocols were not implemented, and that failure was concealed.

56.    Defendants, by and through their agents, directed their teachers, administrators and others to alter or falsify grades of numerous students to ensure passage, retention and completion of the program by those students.

57.    Defendants knew the reports and applications for grant monies contained enrollment numbers, retention figures, and graduation rates and statistics for students which were falsified to conceal a high rate of attrition.  Defendants represented that they had successfully awarded scholarships and stipends with grant monies and increased the number of disadvantaged students completing the nursing program.  However, they concealed that many of those students' grades were inflated to ensure matriculation, that many subsequently had difficulty passing their nursing boards which resulted in the nursing program's placement on probationary status by the Montana State Board of Nursing.

58.   Defendants' statements and representations regarding the number of enrolled and successfully matriculating students were materially false.  They were made to induce the United States to pay grant monies which were contingent upon successful matriculation and graduation.

59.   Defendants improperly utilized grant monies for meals and travel by staff and employees which were not covered or authorized by the grant, an expenditure expressly prohibited in grant terms and conditions.

60.   As a result of the Defendants' false claims, the United States awarded Defendants substantial grant monies for provision of services and achievements which were never performed or achieved.

## DAMAGES

61.   The United States has been damaged by the above-mentioned misrepresentations and false claims in a sum of not less than $2,386,985.00. Defendants knowingly made false claims to officials of the United States for the purpose of obtaining substantial grant monies.

62.   Wherefore, the United States is entitled to damages from Defendants in accordance with the provisions of 31 U.S.C.A. §§ 3729 to 3733, of which up to 30 percent should be paid to Plaintiffs as Relators, and such further relief as is appropriate in the premises.

63. Relators have direct and independent knowledge of the facts underlying the complaint, and the facts and allegations underlying this Complaint have not been publicly disclosed as defined under the False Claims Act. 31 U.S.C.A. § 3730(e)

### III. VIOLATION OF 31 U.S.C. § 3730(h)

64. This is a civil action brought by Plaintiffs on their own behalf against Defendants for violation of 31 U.S.C. § 3730(h).

65. Plaintiffs were employed by Defendant Salish Kootenai College, Inc. as instructors, clinical coordinators, mentors and grant managers. Their duties included instruction of nursing students, coordination of clinical externships, coordination of lab activities for Defendants and compilation and presentation of data for purposes of attaining federal grant funding.

66. Plaintiffs investigated, discussed and reported complaints and concerns regarding Defendants' fraudulent modification and misrepresentation of retention and passage rates to ensure receipt of federal grand monies. Defendants were aware of that protected activity.

67. As a result of their protected activity, Defendants and their agents discharged, demoted, threatened, harassed and otherwise discriminated against

Plaintiffs in the terms and conditions of their employment, ultimately terminating their employment and canceling their contracts in or around May, 2012.

68.    These activities were protected under 31 U.S.C. § 3730(h).

69.    The adverse employment actions of Defendants in retaliating against Plaintiffs because of their investigation into and complaints regarding Defendants' improper modification of grades and passage rates and reporting of the same to the United States violates the provisions 31 U.S.C.A. § 3730(h) prohibiting discrimination by employers against employees who investigate and/or report violations.

70.    As a direct and proximate result of the foregoing, Relators/Plaintiffs have lost all the benefits and privileges of employment.  Relators/Plaintiffs are entitled to all relief necessary to make them whole.

### IV.    VIOLATION OF MONT. CODE ANN. §§ 39-2-802 - 804

71.    Defendants have violated Mont. Code Ann. §§ 39-2-802 - 804.

72.    Following their adverse employment actions including, but not limited to, termination or non-renewal of employment contracts, Defendants prevented or attempted to prevent, by word or writing, the Plaintiffs from obtaining employment with another employer.

73.    Defendants blacklisted and/or allowed their employees to blacklist Plaintiffs.

74. Defendants' conduct prevented Plaintiffs/Relators from obtaining employment following their discharge or release from employment with Defendants.

75. Defendants are guilty of a misdemeanor for such conduct and are liable to Plaintiffs for punitive damages.

## V. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

76. Defendants and Plaintiffs entered into an employment contract.

77. Defendants gave Plaintiffs consistent favorable reviews and other objective manifestations of reliable, positive employment.

78. These manifestations gave rise to a reasonable expectation of continued employment and job security.

79. Defendants had a duty to exercise good faith and deal fairly in their employment relationship with Plaintiffs.

80. Defendants breached their duty of good faith and fair dealing. Such a breach has resulted in damages.

## VI. VIOLATION OF MONT. CODE ANN. §§ 27-1-801 et seq

81. Defendants, by and through their agents, issued false and unprivileged publications.

82. Those publications suggest or charge Plaintiffs with commission of a crime and tend directly to injure Plaintiffs in their profession, trade or business.

83.    By natural consequence of Defendants' actions, Plaintiffs have suffered actual damages.

**WHEREFORE, Plaintiff United States of America, ex rel Relators, prays for judgment to be entered against Defendant, as follows:**

a.    Defendants be required to answer this Complaint; and that a judgment be entered in favor of plaintiff United States of America ex rel. Relators

**b.**    Relators be awarded damages in an amount three times the amount of all sums paid by the United States of America as a result of the Defendants' violations of 31 U.S.C.A. § 3729, plus mandatory statutory penalties and treble damages pursuant to 31 U.S.C.A. § 3729(a);

**c.**    Relators be awarded, on their own behalf, 30 percent of the proceeds collected by the United States of America as a result of the institution of this action;

**d.**    Relators be awarded costs and attorneys' fees incurred as a result of bringing this action pursuant to the False Claims Act;

**e.**    Declaring the adverse employment acts and practices complained of herein to be in violation of the whistleblower protections contained in 31 U.S.C.A. § 3730(h);

**f.**    Enjoining and permanently restraining the violations of the whistleblower protections contained in 31 U.S.C.A. § 3730(h);

**g.**   Making Relators whole for all earnings and benefits they would have received but for Defendants' discriminatory and retaliatory treatment including but not limited to wages (including front and back pay) and benefits and any and all other relief afforded under the whistleblower protections contained in 31 U.S.C.A. § 3730(h);

**h.**   Directing Defendants to pay Relators general compensatory damages in an amount to be proven at trial;

**i.**   Directing Defendants to pay Relators special compensatory damages including but not limited to actual and anticipated wage loss in an amount to be proven at trial;

**j.**   Declaring Defendants' acts against Relators as willful, wanton, and malicious, and directing Defendant pay Relators punitive damages in an amount to be proven at trial;

**k.**   Declaring Defendants' acts to be violative of Mont. Code Ann. 39-2-802, 803, and holding them liable for punitive damages in an amount to be determined at trial; and

**l.**   Granting such other and further relief as this court deems proper.

## JURY REQUEST

Relators/Plaintiffs respectfully pray for trial by jury.

Respectfully submitted this 29th day of October, 2012.

By: _____
Trent Baker
Attorneys for Relators/Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon the following counsel of record, by the means designated below, this 29th day of October, 2012.

_____ ECF
_____ U.S. Mail
_____ Fedex
__1__ Hand-Delivery
_____ Facsmile

1.    US District Court Clerk

2.    Montana Attorney General

Trent N. Baker
Attorneys for Relators/Plaintiffs