# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| FAWN CAIN, TANYA ARCHER, and SANDI OVITT, | CV-12-181-M-BMM |
| Relators and Plaintiffs, | **ORDER** |
| vs. | |
| SALISH KOOTENAI COLLEGE, INC., et al., | |
| Defendants. | |

The Court addresses two motions. Defendants Robert Fouty, Jim Durglo, Renee Pierre, Ellen Swaney, Linden Plant, Tom Acevedo, Zane Kelly, Ernest Moran, Luana Ross, Carmen Taylor, Elaine Frank, Lisa Harmon, Rebekkah Hulen, and Dawn Benson (collectively "Individual Defendants"), move the Court to Certify its May 17, 2018, Order as a final judgement for purposes of appeal. (Doc. 109). The Individual Defendants further move the Court to dismiss this matter for failure to state a claim under the False Claims Act ("FCA") and for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. 111).

## I. BACKGROUND

This Court entered an order in 2014 dismissing Salish Kootenai College ("the College") from this action based on its status as a sovereign tribal entity and

1

therefore not being a "person" subject to suit under the False Claims Act. (Doc. 39). The Court also dismissed Plaintiffs' original complaint against Defendants Salish Kootenai College Board of Directors—the Individual Defendants. The Court allowed Plaintiffs to file an amended complaint in which Plaintiffs were directed to state with particularity the circumstances that constitute fraud or mistake, pursuant to Rule 9(b). (Doc. 39).

Plaintiffs appealed the ruling. The Ninth Circuit remanded the dismissal of the College so that this Court could analyze different factors to determine whether the College qualified as an arm-of-the-tribe. (Doc. 78 at 13). The Ninth Circuit further ordered this Court to allow Plaintiffs to conduct additional jurisdictional discovery. (Doc. 78). This Court again dismissed the College based on its renewed determination that the College qualified as an arm-of-the-tribe and thus stood as a sovereign entity not subject to suit under the False Claims Act 31 U.S.C. § 3729 ("FCA"). (Doc. 108).

Plaintiffs, as relators in this *qui tam* action, currently seek to hold the Individual Defendants personally liable, pursuant to the FCA, for their alleged individual fraudulent conduct. Plaintiffs further claim that the Individual Defendants stand personally liable, pursuant to 31 U.S.C. § 3730(h), for their alleged retaliatory actions against Plaintiffs.

## II. MOTION TO DISMISS

A motion to dismiss tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6). The standard for dismissal under Rule 12(b) remains well established. "All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995). The complaint will not be dismissed unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support a claim that entitles the plaintiff to relief. *Id.*

A party must plead adequately claims under § 3729 of the FCA to satisfy the standards of both Rule 8 and Rule 9 of the Federal Rules of Civil Procedure. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2003-04 n. 6 (2016). Rule 8(a)(2) requires that a plaintiff's complaint make a short and plain statement. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 similarly requires that the complaint contain "sufficient factual matter" that, taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim appears plausible when the pleading raises factual content sufficient to allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

An assertion of fraud or mistake requires a plaintiff to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Courts recognize, however, that "knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Plaintiffs may not "lump multiple defendants together." *United States v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011). Plaintiffs instead must "differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.* Plaintiffs must also "identify the role of each defendant in the alleged fraudulent scheme," *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). This identification requirement forces Plaintiffs to set out the "who, what, when, where, and how" as to each defendant. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Individual Defendants argue that Plaintiffs' Amended Complaint fails to match the pleading requirements contemplated by Rule 9(b). The Individual Defendants first argue that the Amended Complaint continues to sue the Board Members "because of" their official capacities. (Doc. 112 at 10). The Individual Defendants contend that Plaintiffs cannot subject the Board Members to the "FCA's punitive liability regime merely because they served on the College's Board." *Id.* Individual Defendants insist further that Plaintiffs have failed to state allegations sufficient to notify each Individual Defendant of the specific conduct with which

he or she may be held liable. *Id.* at 2-3. Individual Defendants allege that this lack of specificity effectively lumps all the Individual Defendants together and fails to identify the role that each Individual Defendant played in the alleged scheme. *Id.*

### A. Plaintiffs May Sue the Individual Defendants Despite their Official Capacities

Individual Defendants rely on the Ninth Circuit's decision in *Maxwell v. Cnty of San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013), to support their argument that the Board Members may not be sued "because of" their official capacities. *Maxwell* provides this Court with the appropriate "remedy-focused analysis" similar to the analysis developed in *Stoner v. Santa Clara Cnty Office of Educ.*, 502 F.3d 1116, 1123-24 (9th Cir. 2007). Namely, an individual capacity suit against a government official presents the ultimate question of who stands as the real party in interest? *Id.*

A claim pursuant to the FCA subjects to liability "any person" who, among other things, knowingly submits a false claim or causes a claim to be submitted to the United States. 31 U.S.C. § 3729. The Ninth Circuit reviewed a district court's dismissal of FCA claims against three state government employees in *Stoner.* The district court wrongly had determined that state sovereign immunity had shielded the government employees from suit. The Ninth Circuit determined that "state employees sued in their personal capacities are 'persons' who may be subject to

liability for submitting false claims to the United States." *Stoner*, 502 F.3d at 1123-24. The Ninth Circuit reasoned that to hold otherwise effectively would grant state officials absolute immunity for any actions taken in the course of their governmental responsibilities. *Id.* at 1125; *see Hafer v. Melo*, 502 U.S. 21, 27-29 (1991).

The Ninth Circuit explained that an "individual capacity suit for damages against state officials alleged to have personally violated § 3729 *does not* implicate the principles of sovereignty . . . because such action seeks damages from the individual defendants rather than the state treasury." *Stoner*, 502 F.3d at 1125 (emphasis in original). "Nor does the fact that a state may choose to indemnify the employees for any judgement rendered against them" bring sovereignty into the issue. *Id.* When a plaintiff holds an individual government employee personally liable for their "knowing participation in the submission of false or fraudulent claims to the United States government, *the state is not the real party in interest . . . and* [sovereignty] poses no barrier to such a suit." *Id.* (emphasis added) (*citing Hafer*, 502 U.S. 21).

The Supreme Court similarly determined that "[a] government official in the role of personal-capacity defendant . . . fits comfortably within the statutory term 'person.'" *Hafer*, 502 U.S. at 27. The plaintiffs in *Hafer* brought a personal capacity suit against Hafer in which they alleged that Hafer had terminated their

employment due to the plaintiffs' contrary political affiliations.  *Id.* at 23.  Hafer raised sovereign immunity as a defense based on the fact that "she acted in her official capacity."  *Id.* at 26.  The Supreme Court found no reason to extend absolute immunity to a government official's action simply *because of* one's status as a government official.  As a result, damage awards against individual defendants who serve as government officials in federal courts "are a permissible remedy in some circumstances notwithstanding the fact that they hold public office."  *Id.* at 30 (*citing Ex parte Young,* 209 U.S. 123 (1908)).

The Ninth Circuit's decision in *Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015), likewise aids the Court's analysis.  The Plaintiffs in *Pistor* filed an individual capacity suit against tribal officers and tribal casino employees.  The tribal defendants argued that sovereign immunity shielded their unlawful actions as they accomplished their actions in furtherance of their official duties and within the scope of official authority.  *Id.* at 1109.  The Ninth Circuit determined that a tribal officer sued in his individual capacity cannot hide behind sovereign immunity from suit so long as the plaintiff seeks relief from the officer personally and not from the government treasury.  *Id.*

The Ninth Circuit explained that the general rule against official capacity claims "does not mean that tribal officials are immunized from individual capacity suits *arising out of* actions they took in their official capacities.  Rather, it means that

tribal officials are immunized from suits brought against them *because of* their official capacities—that is, because the powers they possess in those capacities enable them to grant the plaintiffs relief on behalf of the tribe." *Id.* at 1112-13. (emphasis in original). Tribal sovereign immunity derives from the same common law immunity principles that shape state and federal sovereign immunity. *Id.* at 1113; *Maxwell* 708 F.3d at 1087-88. An individual capacity suit proves proper, therefore, when a plaintiff seeks to hold a government official or employee personally liable for their own unlawful choice or action.

The Court acknowledges that the claims against the Individual Defendants differ from a state-official claim as the claims here implicate the irrefutable importance of protecting tribal sovereignty. The respect and care that a court must afford to tribal sovereignty remains emphatically respected. A court accordingly must be sensitive to whether the plaintiff seeks a judgment against the tribe or the individual person. *Maxwell*, 708 F.3d at 1088. This Court understands, however, that the reasoning presented in *Stoner*, *Garcia*, and *Hafer* guides this Court to determine that the Tribe does not stand as the real party in interest here. Plaintiffs seek to hold the Individual Defendants, who serve as tribal employees, personally liable for their alleged fraudulent conduct "*arising out of* actions they took in their official capacities." *Garcia*, 791 F.3d at 1112.

The Supreme Court similarly determined in *Lewis v. Clarke*, __ U.S. __, 137 S.Ct. 1285, 1291 (2017), that when a party brings a suit against a tribal employee in their individual capacity, the employee, not the tribe, stands as the real party in interest and the tribe's sovereign immunity is not implicated. This conclusion parallels the Ninth Circuit's reasoning in both *Stoner* and in *Garcia*. If the Court were to adopt the Individual Defendants' argument and prevent an action against a tribal official in his personal capacity, the Court effectively would grant absolute immunity to tribal officials under the FCA for any actions taken in the course of, or because of, their governmental responsibilities. The allegations presented by Plaintiffs prove serious, however, and this Court cannot ignore the fact that fraud equals fraud, regardless of one's position and duties in any governmental capacity.

A tribal government employee sued in his or her personal capacity stands, therefore, as a person who may be subject to liability for knowingly submitting false information to the United States for purposes of FCA liability. *Stoner*, 502 F.3d at 1125. This Court agrees that when a plaintiff seeks to hold a tribal government employee personally liable for their "knowing participation in the submission of false or fraudulent claims to the United States government, *the [tribe] is not the real party in interest . . .* and [sovereign immunity] poses no barrier to such a suit." *Id.* (emphasis added). It is of no consideration that the

Individual Defendants made the alleged fraudulent decision 'because of' their

official tribal duties.  *See Hafer*, 502 U.S. 21.

### B.    The Amended Complaint Proves Sufficient for Rule 9(b)'s Particularized Standards

The Court considers next whether the facts presented in the Amended

Complaint sufficiently allege fraudulent conduct to satisfy Rule 9(b)'s

particularized pleading standards.  The FCA makes liable any person who

knowingly presents or causes to be presented, who uses or causes to be made or

used, a false record or statement material to a false or fraudulent claim.  31 U.S.C.

§ 3729(a)(1).  A claim pursuant to the FCA may be based on the allegation that a

party fraudulently has certified compliance with a statute or regulation as a

condition to government payment.  *Corinthian Colleges*, 655 F.3d at 992.

To state a claim against the Individual Defendants in their personal capacities,

the Plaintiffs must show that the individual employees "knowingly present[ed], or

cause[d] to be presented, to an officer or employee of the United States

Government . . . a false or fraudulent claim for payment or approval.  31 U.S.C. §

3729(a)(1); *see Stoner*, 502 F.3d at 1124.  A relator in an FCA action need not

identify representative examples of false claims to support every allegation.  *Ebeid*,

616 at 998.  The use of representative examples simply represents one means of

meeting the pleading obligation.  *Id.*  It is sufficient to allege particular details of a

scheme to submit false claims paired with reliable indicia that lead to a strong

inference that false claims actually were submitted. *Id.*; *see United States v. IASIS*

*Healthcare LLC*, 2016 WL 6610675, at *5 (D. Ariz. Nov. 9, 2016).

Rule 9(b) serves two purposes. First, the allegations must provide the

defendant proper notice of the particular misconduct that a plaintiff alleges to

constitute the fraud charged. *United States v. United Healthcare Ins. Co.*, 848 F.3d

1161, 1180 (9th Cir. 2016). This notice requirement allows a defendant the

opportunity to defend efficiently the charge and not simply deny the fraudulent act.

*Id.* The Ninth Circuit emphasized that the "most basic consideration for a federal

court in making a judgement as to the sufficiency of a pleading for purposes of

Rule 9(b) . . . is the determination of how much detail is necessary to give adequate

notice to an adverse party and enable that party to prepare a responsive pleading."

*Id.* (*citing* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1298 (3d ed. 2016).

The second principle serves to "deter the filing of complaints as a pretext for the

discovery of unknown wrongs, to protect the defendants from the harm that comes

from being subject to fraud charges, and to prohibit plaintiffs" from causing

expansive social and economic costs absent basis in fact. *United Healthcare Ins.*

*Co.*, 848 F.3d at 1180. Plaintiffs may meet Rule 9(b)'s pleading requirements

when plaintiffs state with particularity the circumstances of fraud while they plead

other factors generally or in accordance with Rule 8. *Corinthian Colleges*, 655

F.3d at 992. Rule 9(b) does not "allow a complaint to merely lump multiple

defendants together but requires plaintiffs to differentiate their allegations when

suing more than one defendant." *Id.* at 997-98. This particularity must include

"the who, what, when, where, and how of the misconduct charged." *Ebeid*, 616

F.3d at 998 (*citing Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

2003)).

   **i.**   The Amended Complaint Properly Identifies "Who" Engaged in the
            Alleged Fraudulent Conduct

Individual Defendants argue that the Amended Complaint fails to differentiate

the allegations specific to each Individual Defendant. (Doc. 112 at 7). Individual

Defendants claim that each allegation represents a "nearly identical" conclusory

statement that lacks factual matter sufficient to support any FCA claim alleged. *Id.*

Individual Defendants argue the lack of specificity lumps together all defendants

and consequently fails to identify the role that each defendant played in the alleged

scheme. *Id.* The Individual Defendants characterize the Amended Complaint as

simply repeating certain allegations that describe each of the various Individual

Defendant's involvement in the fraud. *Id.* at 7-9.

 Plaintiffs' Amended Complaint repeats multiple paragraphs and inserts a

separate name into each allegation. This practice does not constitute a failure per

se.  The crux of the Amended Complaint, and what likely saves it, is that Plaintiffs allege that the Individual Defendants all acted in similar manners, all had similar involvements, and all were warned by Plaintiffs.  The collective warning implies that the Individual Defendants' possessed collective knowledge, collectively acted, and collectively omitted specific information in the applications submitted that gave rise to the alleged fraud against the United States Government.

Many paragraphs in the Amended Complaint appear similar.  The Court notes, however, that each repeating paragraph correlates to the duties and obligations of the position held by the specific Individual Defendant named in the paragraph.  For example, each allegation against a Director sitting on the College's Board states as follows:

> Individual Defendant [insert Director name] is or was, during the relevant time period, a Montana resident and member of the SKC Board of Directors. Defendant [insert Director name] oversaw and participated in the planning, development, operation, and evaluation of [the College], and in formulating [the College's] goals, objectives and policies consistent with U.S. Department of Education guidelines. Defendant [insert Director name] oversaw and participated in planning, application, receipt and utilization of federal funds applied for and received by [the College] nursing program and oversaw and participated in the operation of that program. Defendant [insert Director name] supervised [the College] President, Luanna Ross and [the College's] Acting President, Elaine Frank. Defendant [insert Director name] oversaw and participated in the implementation and conduct of [the College] employee grievance process. Relators reported to Defendant [insert Director name] the falsification of

13

student grades and the presentation of false claims to the United States agencies and officials, and the use of false records or statements material to the false claims. Despite the reports, Defendant [insert Director name] continued to knowingly cause the presentation of false claims and the use of false records or statements material to the false claims . . .

(Amend. Compl. ¶¶ 7-14).

This allegation proves sufficient to satisfy the two basic principles of Rule 9(b). *United Healthcare Ins. Co.*, 848 F.3d at 1180. The allegation first places the named defendant on notice that they are being held personally liable for false information that the named defendant either knowingly submitted, omitted or caused to be falsified. This information by itself likely would fail the particularized standards necessary for Rule 9(b). The Amended Complaint pleads cumulative facts, however, about the grant applications used to traffic the fraudulent information, the amounts obtained, and provides the particular dates that the Individual Defendants submitted the grant applications.

The alleged facts in the Amended Complaint, taken as true, further demonstrate that the Individual Defendants possessed knowledge of the fraudulent conduct. Plaintiffs clearly state that they, as original sources, informed each of the Individual Defendants personally about the alleged fraudulent information. Moreover, to believe that the Individual Defendants possessed no knowledge of the applications at issue in the Amended Complaint, when each individual defendant

allegedly served in some supervisory role with some form of control over the grant applications or fraudulent information, fails at the most basic of logical assumptions. The Amended Complaint properly identifies the "who" variable of Rule 9(b)'s particularity standard and satisfies the two basic principles of Rule 9(b). *United Healthcare Ins. Co.*, 848 F.3d at 1180.

### ii. The Amended Complaint Properly Describes "What" the Alleged Fraudulent Schemes Entailed

Plaintiffs ground FCA claims on the allegation that each Individual Defendant personally engaged in two different fraudulent schemes. The alleged schemes stem from the Individual Defendants knowing participation in the submitting of, or causing the submission of, false claims.

The Amended Complaint alleges first that the Individual Defendants engaged in fraud by falsifying information to acquire and maintain federal funds under the Pathways Into Nursing Education ("PINE") Grant. (Amend. Compl. ¶¶ 29-58). The PINE Grant scheme materialized when the Individual Defendants allegedly altered the College's records and reports in order to comply with the PINE Grant requirements. (Amend. Compl. ¶¶ 39-42). Plaintiffs allege that the Individual Defendants violated protocols so that the College would remain eligible for grant funding, inflated and modified grades to reflect a higher passage and retention rate, failed to follow specific retention track plan guidelines when students were failing

in the nursing program, and possessed knowledge about these wrongdoings yet still allowed the scheme to progress.  (Amend. Compl. ¶¶ 42-43, 46-47, 57).  Plaintiffs similarly identify the amount of funding received through the alleged fraudulent scheme.  (Amend. Compl. ¶¶ 38, 49).

The Amended Complaint describes the Individual Defendants' alleged fraudulent conduct of falsifying information to acquire and maintain federal funds under the Nursing Workforce Diversity ("NWD") Grant.  (Amend. Compl. ¶¶ 59-78).  The Amended Complaint outlines the purpose and requirements of the NWD Grant.  The Amended Complaint specifically names each Individual Defendant who allegedly knowingly presented, or caused to be presented, false or fraudulent information to obtain NWD Grant funding.  The Amended Complaint specifies that the College received approximately $1,052,339.00 in federal funding through the scheme and that the Individual Defendants submitted the applications used to receive this amount "on or about July 1, 2009, May 11, 2010, and March 15, 2011."  (Amend. Compl. ¶¶ 63-64).

The Individual Defendants dismiss the Amended Complaint as containing merely "naked assertions of liability" that fail to "state a plausible claim against any of the Board Members."  (Doc. 112 at 9).  Ignoring the detail in the Amended Complaint and adopting the Individual Defendants' argument effectively would

bar any lawsuit alleging fraud unless the relator possessed every minute detail about an alleged fraudulent scheme. Rule 9(b) poses no such a standard.

Rule 9(b) requires that a defendant in an alleged scheme be put on notice of what a plaintiff alleges against that defendant. The claim cannot be frivolous and without merit. The detail used to describe the Individual Defendants' alleged fraudulent scheme here proves sufficient to place the Individual Defendants on notice about the specific grants containing the alleged fraudulent information, the amounts received, and specific dates that the Individual Defendants submitted the applications. Indeed, this level of particularity represents what Rule 9(b) seeks to require. *Ebeid*, 616 F.3d at 998; *United Healthcare Ins. Co.*, 848 F.3d at 1180. The Amended Complaint adequately describes what the alleged fraudulent schemes entailed.

**iii.** The Amended Complaint Properly Pleads "When" and "Where" the Alleged Fraudulent Schemes Took Place

The Amended Complaint pleads sufficient information to place the Individual Defendants on notice of when and where the alleged fraudulent activities took place. The Amended Complaint states that the PINE Grant scheme began in July 2008 and continued through March 2012. (Amend. Compl. ¶¶ 38). The Amended Complaint similarly identifies that the NWD Grant scheme occurred during July 2009, May 2010, March 2011 and August 2011. (Amend. Compl. ¶¶ 64, 67).

The Amended Complaint indicates where the scheme occurred. Plaintiffs allege that the Individual Defendants knowingly allowed the scheme to progress while employed and serving on the Board of the College. The student data and grades allegedly were falsified and submitted at the College. The College, located only in one place, received the fraudulent moneys totalling $1,675,002.00 from the PINE Grant and $1,052,339.00 from the NWD Grant. (Amend. Compl. ¶¶ 38, 64, 67).

The Amended Complaint properly places Individual Defendants on notice of the exact dates that the Individual Defendants submitted the alleged false information. And finally, the Amended Complaint makes the Individual Defendants aware that the College indeed received the funds in the amounts specifically alleged.

    **iv.** The Amended Complaint Properly Explains "How" the Fraudulent Scheme Came About

The Amended Complaint properly describes how the Individual Defendants submitted fraudulent information to meet the PINE and NWD Grant requirements. The PINE Grant requires, for example, that the College state its objectives of training, recruiting, and developing American Indian and Alaska Native ("AI/AN") Students in health-related professions. (Amend. Compl. ¶ 31). The Indian Health Service ("IHS") conditions the award of grant monies based on the submitted

enrollment numbers of full-time AI/AN students in the Associates of Science in Nursing and Bachelors of Science in Nursing programs. (Amend. Compl. ¶ 32). The College uses the grant money to pay for the students' tuitions and associated expenses specifically outlined in the budget documents submitted by or on behalf of the Individual Defendants. *Id.*

These Grant monies are not guaranteed. The Amended Complaint outlines the requirements that the College must meet to remain eligible for the Grant monies. Students must maintain full-time enrollment, must maintain an acceptable level of academic standing, and must comply with probationary procedures if a student fails to meet specific requirements. (Amend. Compl. ¶ 33-35). If a student were to fail or withdraw from a program, the College must repay the Grant monies within three years. The College must notify IHS immediately "if any scholarship recipient failed to take a full-time course load or remain in good academic standing." (Amend. Compl. ¶¶ 36-37). The Amended Complaint alleges that the Individual Defendants maintain responsibility to oversee and participate in this notification process if a student fails to meet these standards.

The fraudulent information that the Individual Defendants allegedly submitted proves specific. To meet the requirements for the PINE Grant, the Individual Defendants allegedly "misrepresented or failed to disclose high student attrition numbers, and misrepresented the actual numbers of students who had failed,

withdrawn or were otherwise unable to satisfy course requirements."  (Amend.

Compl. ¶ 41).  Student grades "were inflated, modified and curved to reflect a

higher passage and retention rate than what was actually achieved."  (Amend.

Compl. ¶ 42).  The Amended Complaint alleges that "failing students were allowed

re-matriculation contrary to [the College's] internal protocols and procedures in

order to . . . remain eligible for federal grant monies."  (Amend. Compl. ¶ 43).

The Amended Complaint states that the Individual Defendants "misrepresented

to IHS that [the College] had a variety of internal and administrative safeguards to

ensure proper budget completion and compliance."  (Amend. Compl. ¶ 48).  The

Amended Complaint alleges specifically that a "February 2010 Semi-Annual

Progress Report in support for an additional $335,000 in IHS grant funds

misrepresented that retention numbers had dropped," and similarly misrepresented

that core study aid programs and courses were ongoing.  (Amend. Compl. ¶ 49).

The above stated facts relate only to the PINE Grant scheme.  Facts relating to

the NWD Grant scheme similarly reflect a variety of specific and particularized

information.  The Amended Complaint continues to allege numerous facts that,

when taken as true, unambiguously guide the Court to understand in detail how

and why the Individual Defendants knowingly would cause fraudulent information

to be submitted to the United States Government.

After careful review of the Amended Complaint, this Court determines that when the facts pled by the Plaintiffs are taken as true, the Amended Complaint sufficiently pleads the "who, what, when, where, and how" required under the Ninth Circuit's *Ebeid* standard. *Ebeid*, 616 F.3d at 998. The Amended Complaint meets the particularized pleading requirements pursuant to Rule 9(b).

### A.    Failure to State a Claim against Individual Defendants for Retaliation under § 3740(h)

Plaintiffs insist that § 3740(h) holds any person liable for retaliatory conduct under the FCA. (Doc. 116 at 22). Plaintiffs claim that the 2009 Congressional Amendment of § 3740(h) that eliminated the term "employers" effectively expanded liability to include non-employer individual defendants. *Id.* Plaintiffs do not stand alone in this assumption. *United States v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796 (N.D. Cal. 2014); *see also Howell v. Town of Ball*, 827 F.3d 515 (5th Cir. 2016).

The district court in *Kiewit* determined that the 2009 amendment to § 3740(h) did not broaden the class of persons subject to liability. *Kiewit Pacific Co.*, 41 F. Supp. 3d at 813. The plaintiff argued that Congress's removal of the term "employer" broadened the plain language of § 3740(h) to direct a court to find any person liable for retaliatory conduct. *Id.* The district court disagreed.

The history of both the provision and the 2009 amendment provided substantial clarity to the amendment's meaning. *Id.* The FCA historically protected "whistleblowers" from retaliation "by their employers." *Id.* The district court pointed to the language of the statute itself. The plaintiff must be made whole if the plaintiff had been "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of *employment* . . ." 31 U.S.C. § 3740(h)(1) (emphasis added).

Each retaliatory term stated above would result only from an employer's retaliatory action. Section 3740(h)'s amendment "was meant only to broaden the category of employee eligible for whistleblower protection to any 'employee, contractor, or agent.'" *Id.*; *see also Howell*, 827 F.3d at 529-30. Nothing in the legislative history would suggest "that Congress intended silently to extend liability under the FCA to anyone other than the employer or entity with whom the plaintiff has a contractor or agency relationship." *Id.*

The analysis and arguments set forth in *Kiewit Pacific Co.*, 41 F. Supp. 3d 796, and in *Howell*, 827 F.3d 515, persuade the Court. The extensive authority cited in each case guide this Court to conclude that the action by Congress in the 2009 Amendment to remove the term "employer" did not implicitly expand retaliatory liability to all potentially foreseeable defendants. The Court agrees with the courts in *Kiewit Pacific Company* and *Howell* that the deleted reference to an employer

simply broadens the class of potential plaintiffs to include "contractors" and "agents." The analysis cannot end here.

The Supreme Court in *Clarke*, 137 S.Ct. at 1290, directed courts to "look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars a suit." *See Hafer*, 502 U.S. at 25. A retaliation claim pursuant to § 3740(h) seeks a remedy for the retaliatory actions of an employer. The remedy available through § 3740(h) can be satisfied only by an employer. *Kiewit Pacific Co.*, 41 F. Supp. 3d 796; *Howell*, 827 F.3d 515. The College stands as the Plaintiffs' employer here. (Doc. 108). Plaintiffs, therefore, seek a § 3740(h) retaliation remedy from the College. Plaintiffs cannot sue their employer, the College, as the College's standing as an arm-of-the-tribe allows the College to share the Tribe's sovereign immunity. (Doc. 108). The College accordingly stands exempt from suit under the FCA and the Plaintiffs may not seek § 3740(h) retaliation damages from the College.

## I. SUBJECT MATTER JURISDICTION OVER STATE LAW CLAIMS

Supplemental jurisdiction exists when a claim arises "under the Constitution, the Laws of the United States, and Treaties made" pursuant to U.S. Const. Art. III, § 2, and the relationship between the federal and state claim permits a federal court to reach a just conclusion in a single action. *United Mine Workers of Am. v. Gibbs*,

383 U.S. 715, 725 (1966). The presiding court must possess subject matter jurisdiction over the federal claim. *Id.* The state and federal claims must stem from "a common nucleus of operative fact" sufficient for a court to try them all in one judicial proceeding. *Id.*

The remaining claims in the Amended Complaint arise under state law. (Amend. Compl. ¶¶ 93-106). Plaintiffs ask this Court to hold the College and the Individual Defendants liable for defamation, blacklisting, and breach of good faith and fair dealing under Montana law. Mont. Code. Ann. §§ 39-2-802 – 804; Mont. Code. Ann. §§ 27-1-801; (Amend. Compl. ¶¶ 93-106). The Court's decision to entertain these claims raises a potential conflict with the long-standing federal policy that favors the promotion of tribal self-government. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987); *Three Affiliated Tribes v. Wold Eng'g*, 476 U.S. 877 (1986); *Merrion v. Jacarilla Apache Tribe*, 455 U.S. 130, 138 (1982).

It is well settled that the Indian Nations and the Federal Government serve as dual sovereigns. *United States v. Plainbull*, 957 F.2d 724, 726-27 (1982); *United States v. Wheeler*, 435 U.S. 313, 323 (1978). Tribal courts remain a competent and proper venue to seek a remedy for claims of defamation, blacklisting, and a breach of good faith pursuant to tribal or common law. This Court would lack jurisdiction, even through a supplemental vehicle, if Plaintiffs brought these claims pursuant to tribal law because a federal court lacks the ability to interpret tribal

24

law.  *LaPlante*, 480 U.S. at 16; *see also Runs After v. United States*, 766 F2d 347, 352 (8th Cir. 1985).  This principle of "judicial self-restraint" comports with Supreme Court precedent respecting tribal self-determination.  *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985).  Nonetheless, this Court could possess supplemental jurisdiction over these state law claims as the defamation, backlisting, and breach of good faith claims share a common nucleus of operative facts with the FCA claim for which this Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

The College remains an arm-of-the-tribe.  (Doc. 108).  Similar to the retaliation claims above, Plaintiffs cannot sue their employer, the College, because the College shares in the Tribe's sovereign immunity.  *Id.*  Plaintiffs thus cannot pursue these state law claims against the College.  Plaintiffs may pursue their defamation and backlisting claims against the Individual Defendants through the Court's exercise of supplemental jurisdiction.

The defamation and backlisting claims arise under the same set of operative facts as the FCA claim.  Plaintiffs allege that the Individual Defendants Ross, Taylor, Frank, Harmon, Hulen and Benson "prevented or attempted to prevent, by word or writing, the Plaintiffs from obtaining employment with another employer" after Plaintiffs had notified or warned the Individual Defendants about the alleged fraud.  (Amend. Compl. ¶ 95).  Plaintiffs allege that Individual Defendants Ross,

Taylor, Frank, Harmon, Hulen and Benson "issued false and unprivileged publications regarding Plaintiffs" following Plaintiffs attempt to notify and warn the Individual Defendants about the alleged fraud. (Amend. Compl. ¶ 104). Both claims stem from the common nucleus of the alleged fraudulent scheme orchestrated by the Individual Defendants. The exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1331 proves proper for the limited purpose of this Court resolving the state law claims against the Individual Defendants. This conclusion in no way diminishes the proposition that a state and its laws possess no power to regulate the affairs of Indians on a reservation absent Congressional intent or tribal consent. *Williams v. Lee*, 358 U.S. 217, 220 (1959); *Plainbull*, 957 F.3d at 727.

## II. LEAVE TO AMEND

This Court previously granted Plaintiffs the opportunity to amend their complaint in December 2014. (Doc. 39). The case remains pending since 2012. Plaintiffs have had the opportunity and significant time to amend their pleadings. This Court will deny their request to amend.

## III. Motion to Certify

Finally, the Individual Defendants move to certify the Court's May 17, 2018, Order as a final judgment for purposes of appeal. The Court will deny this

motion as Plaintiffs *qui tam* action and related state law claims against the Individual Defendants remain viable.

## **ORDER**

Accordingly, IT IS ORDERED that Individual Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 111) is GRANTED, in part, and DENIED, in part. Specifically, Individual Defendants' Motion to Dismiss (Doc. 112) is resolved as follows:

IT IS ORDERED that the Individual Defendants' Motion to Dismiss the FCA claims is DENIED, as Plaintiffs' Amended Complaint (Doc. 40) sufficiently states a claim against the Individual Defendants.

IT IS ORDERED that the Individual Defendants' Motion to Dismiss Plaintiffs' retaliation claim pursuant to § 3740(h) is GRANTED, as the College, as the Plaintiffs' employer, represents the only potentially liable party for a retaliation claim pursuant to § 3740(h) and the College stands as an arm-of-the-tribe that shares in the Tribe's sovereign immunity.

IT IS ORDERED that the Individual Defendants' Motion to Dismiss state law defamation, blacklisting, and breach of good faith claims against the College is GRANTED, as the College cannot be held liable pursuant to sharing in the Tribe's sovereign immunity.

IT IS ORDERED that the Individual Defendants' motion to dismiss state law defamation and blacklisting claims against the Individual Defendants is DENIED, as the Court properly may exercise supplemental jurisdiction over these state law claims as they arise from the same set of operative facts as Plaintiffs' *qui tam* action.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Amend its Complaint is DENIED.

Finally, IT IS ORDERED that Individual Defendants' Motion to Certify the Court's May 17, 2018, Order (Doc. 109) is DENIED.

DATED this 20th day of February, 2019.


_____
Brian Morris
United States District Court Judge